IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| KENNETH THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-cv-996-ALB |
| | ) |
| STERIS CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Thomas ("Thomas") filed a four-count complaint alleging that Defendant STERIS Corporation ("STERIS") fired him for engaging in protected conduct and belonging to a protected class. Count 1 alleges that STERIS fired him because he was disabled in violation of the ADA. (Doc 24 ¶¶35-39). Count 2 alleges that STERIS fired him for requesting that his disability be accommodated in violation of the ADA. *Id.* ¶¶40-45. Count 3 alleges that STERIS fired him because he was over forty in violation of the ADEA. *Id.* ¶¶46-50. Count 4 alleges that STERIS fired him for complaining that STERIS was firing other people because they were over forty in violation of the ADEA. *Id.* ¶¶51-56. This matter comes before the Court on Defendant STERIS' motion for summary judgment on all four counts. (Doc. 56). Upon consideration, the motion is GRANTED as to all counts.

## BACKGROUND

Defendant STERIS is a globe-spanning enterprise that styles itself a "leading provider of infection prevention and other procedural products and services."[1] STERIS operates a plant in Montgomery, where Thomas was employed for the better part of 40 years as a human resources manager.[2] (Doc. 56 at 3). At times

---

[1] *About Steris*, https://www.steris.com/about/company (last visited Sept. 9, 2019)
[2] In the 33-year period between 1982 and 2015, Thomas took one hiatus from STERIS between 1991 and 2001.

relevant to this action, Thomas was supervised by Denise DeThomas and Mac McBride. (Doc. 56 at 3-4).

On April 15, 2015, Thomas' employment came to an end. (Doc. 60 at 2). The parties find themselves embroiled in controversy because they each have distinctly different memories of Thomas' tenure with the company. Thomas alleges that his firing was the result of a veritable cannonade of STERIS civil rights abuse, including age discrimination, disability discrimination, retaliation for requesting disability accommodations, and retaliation for protesting age discrimination. *Id.* at 3. Conversely, STERIS alleges that Thomas was an incompetent employee who could not continue to serve as a human resources manager because none of the human resources he was managing trusted or respected him and Thomas had been given over a decade to convince them of his conviviality. (Doc. 58-1 at 13).

Thomas was 63 years old at the time of his departure from STERIS. (Doc. 61-1 at 1). He was also disabled as a result of an injury sustained while serving in the United States military. (Doc. 61-1 at 1). Thomas' left knee required multiple surgeries and he needed a cane to walk. *Id.* at 2. After an initial stint as the human resources manager in the Montgomery plant during the 1980s, Thomas was rehired to the same position in 2001. (Doc. 58-1 at 3). During the relevant periods of his employment with STERIS, Thomas was in possession of an authentic handicapped placard and made use of a handicapped parking space. (Doc. 56-6 at 1).

Until 2014, Thomas received passable performance reviews, either "meeting" or "achieving" expectations with the only criticism being that he should spend more time walking amongst the plant workers. (Doc. 58-1 at 3). In late 2014, a decline in Thomas' performance seems to have coincided with the appointment of DeThomas as his new supervisor. *Id.* at 4. In just two months, Thomas' spotless record began to fall apart. In August, Thomas failed to attend an important corporate meeting and then, during DeThomas' first visit to the Montgomery plant, she was told by employees, including members of the leadership team, that they did not trust Thomas. (Doc. 58-1 at 7). In September, Thomas attended a corporate training session but failed, not only to successfully complete the training, but also to follow-up with remedial education. *Id.* at 8. Thomas' unhappy fall continued when he accidentally deleted a presentation he was supposed to give at STERIS' headquarters and just days later incorrectly informed McBride as to the rates that the Montgomery plant paid independent contractors, resulting in significant embarrassment when McBride conveyed the incorrect figures to executives. *Id.* at 9-10. Thomas himself described the latter mistake as a "big deal." *Id.* at 10.

In November of 2014, Thomas attended his mid-year performance review with DeThomas, during which the two spoke about his recent difficulties and the lack of confidence that some employees had in Thomas' management. *Id.* at 10. Thomas admitted during this review that he was a "work in progress" and had "a lot

of areas for improvement." *Id.* To follow up on the discussion, DeThomas conducted a Hogan 360 review on Thomas by sending surveys to 28 of Thomas' coworkers asking them to give her feedback about his performance. *Id.* at 11. The results of the review showed Thomas to be in the bottom 10% of managers, with particularly low marks in areas imperative to success as a human resource manager, including the ability to build trust and relationships. *Id.* at 12.

Following his winter of discontent, Thomas met with DeThomas and McBride on April 16, 2015 to discuss his performance issues. *Id.* He stated during the meeting that he knew he had dropped the ball on at least one occasion and failed to meet expectations. *Id.* at 12. At this meeting, Thomas' supervisors mentioned two courses of action. The first course involved a "transition" plan that would effectively terminate Thomas but allow him to stay on for a few months to ease the process. (Doc. 58-1 at 13-14). The second involved a performance improvement plan but DeThomas made clear that, given the lack of trust Thomas' co-workers had in him, she did not believe it would work. (Doc. 62 at 5). At this point, Thomas left the building and returned only once to collect his things. (Doc. 58-1 at 14). On April 29, DeThomas filled out and returned a notice of claim to the Alabama State Department of Labor confirming that Thomas has been discharged for performance issues and misconduct. (Doc. 61-2 at 2).

Thomas explains the foregoing series of undisputed facts by saying that the timeline of his alleged inadequacy, which he argues is comprised only of the second half of 2014, conveniently began after a series of discriminatory interactions with his employer. (Doc. 61-8 at 45). Thomas presents three instances of interaction between himself and STERIS that he believes are enough to show that STERIS fired him for engaging in protected activity or belonging to a protected class. First, in 2013, Thomas opposed STERIS' firing of Alan Burnett, who was over the age of 40 at the time, on the grounds that the decision did not comply with the corporation's policies and procedures.[3] (Doc. 1-1 at 2). Second, in May of 2014, McBride asked Thomas to consider how employees would view his use of the handicapped spot considering his stories about playing golf over the weekend. (Doc. 60 at 16). Third, in both 2012 and early 2014, McBride reported to Thomas' direct supervisor that he needed to walk the plant floor more often, despite McBride's knowledge of Thomas' handicap. (Doc. 60 at 17).

STERIS now seeks summary judgment that Thomas' firing was not motivated by a desire to discriminate or retaliate.

---

[3] Plaintiff's brief also mentions Mai Ujjin, who was never fired or subjected to any adverse employment action and in fact still works at the Montgomery plant. Plaintiff claims that when Ujjin was considered for transfer at one point, he brought up that it wasn't right that Ujjin wouldn't be accorded a relocation package. (Doc. 61-8 at 86)

## STANDARD

The court will grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). The moving party need not produce evidence disproving the opponent's claim; instead, the moving party must demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, the nonmoving party must go beyond mere allegations to offer specific facts showing a genuine issue for trial exists. *Id.* at 324. When no genuine issue of material fact exists, the court determines whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

There are three central issues in this case.

The first issue is whether Thomas suffered an adverse employment action. Defendant argues that Thomas was never terminated because his supervisors offered him a choice at the meeting between a performance improvement plan and a transition plan and, instead, Thomas resigned. (Doc. 58-1 at 22). Therefore, Defendant urges that the Court find that Plaintiff has failed to make out a prima facie case on any of his claims. (Doc. 62 at 1). Plaintiff argues that he was never given a true option and was effectively fired. (Doc. 61-1 at 2-3). The Court resolves all

inferences in favor of Plaintiff and concludes that he has produced enough evidence that a reasonable jury could find that he suffered an adverse employment action.

Second, if there is a dispute about whether Thomas was fired, the Court must determine whether that dispute precludes summary judgment. Plaintiff urges that this dispute ought to preclude summary judgment because it involves a material issue of fact. (Doc. 60 at 5). Defendant concedes that this dispute may mean that Plaintiff can establish a prima facie case for his claims, but it urges the Court to continue to address Defendant's justification for the adverse employment action. (Doc. 58-1 at 22). The Court agrees with Defendant that the dispute over whether Thomas was fired or quit is not dispositive.

Third, there is the issue of causation. To survive a motion for summary judgment, all four of Plaintiff's claims require him to directly rebut any neutral business justification that Defendant proffers as an explanation for action that might otherwise appear discriminatory. *Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1333 (11th Cir. 1999). Plaintiff has asserted that there existed discriminatory intent behind his firing. He has recounted several remarks made by his supervisors that suggest they saw his protected status as an inconvenience. If the only evidence before the Court as to Thomas' inadequacy were the negative reviews given to him by his supervisors, those who possibly stood to gain by discriminating, there might be an issue for trial. However, Defendant has made a showing that Thomas'

coworkers did not trust or respect him: the Hogan 360 review. This showing corroborates DeThomas' testimony regarding her visit to the plant and, combined with other complaints of malfeasance, establishes a neutral justification for Thomas' firing that he cannot rebut with substantial evidence.

**I.  A reasonable jury could conclude that the April Meeting led to an adverse employment action.**

Each of Plaintiff's claims[4] requires for a prima facie showing that an action be taken against him. The Eleventh Circuit precedent has a broad definition of "adverse employment action." *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000). Any kind of action that would result in an alteration of the conditions of employment qualifies as an adverse employment action. *Id.*

Here, the Court, careful to draw all factual inferences in favor of the non-movant, finds that there are enough facts in the record to support an inference that Thomas was terminated at the April meeting. Plaintiff recalls, and DeThomas corroborates, that his outlook was bleak at the April meeting. The undisputed facts are that DeThomas mentioned (1) a transition plan that would gradually phase him out of employment and (2) a performance improvement plan that would not be expected to work. (Doc. 58-1 at 13). As Plaintiff points out, there is a genuine dispute of fact as to the nature of the statements in the final meeting, specifically

---

[4] A finding that there was an adverse employment action is not necessary for a prima facie showing of discrimination based on disability. However, it is still necessary to show that some action was taken against him that was motivated by discrimination.

whether Thomas had a true option between two courses of action or whether the options were illusory and mentioned in an offhand manner to illustrate just how hopeless Thomas' supervisors believed him to be as they fired him.  (Doc. 60 at 2).  The Court can construct a plausible scenario where Thomas believed he was being fired.  Termination is obviously an action that constitutes an adverse employment action.  Accordingly, the Court concludes, resolving all inferences in favor of the Plaintiff, that a reasonable jury could conclude that he was fired at the April meeting and that his termination constituted an adverse employment action.

## II. The dispute of fact about termination is insufficient to foreclose summary judgment.

Plaintiff argues that if there is a genuine dispute of material fact on any issue, summary judgment cannot be granted.  *Id.*  And, having established a dispute about whether he was terminated or resigned, Plaintiff's arguments effectively end.

But Plaintiff misunderstands the analytical framework for a discrimination case under the ADA and ADEA.  Plaintiff's claims must be tested under the *McDonnell Douglas* framework.  *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999).  This test means that there are additional hurdles for Plaintiff to clear even after the prima facie stage; a fact that is disputed at the prima facie stage may not be relevant to the ultimate determination if Plaintiff's case is conclusively decided by a later hurdle.  The *McDonnell Douglas* test shifts the burden of production twice.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  First, once the plaintiff has made a prima facie showing of each element, the burden shifts to the defendant to show a neutral business justification for the firing.  Once the defendant does this, the burden shifts back to the plaintiff to directly rebut this showing and to expose it as pretextual cover for discriminatory actions.  *Id.*  In this case, as the Court will detail later, Defendant has proffered a legitimate justification and Plaintiff has failed to rebut it.

Plaintiff argues that "because there is a dispute as to why Mr. Thomas is no longer employed with the Defendant, summary judgment must be denied."  (Doc. 60 at 11).  But Plaintiff is wrong not to address the remaining steps of the *McDonnell Douglas* burden-shifting test. The case cited by Plaintiff to support his proposition illustrates his misunderstanding.  In *Fetner*, a police chief sued a city claiming a violation of his due process rights after he was fired without a hearing.  *Fetner v. City of Roanoke*, 813 F.2d 1183, 1186 (11th Cir. 1987).  The city claimed that the police chief had resigned in front of the mayor and the chief claimed the mayor had fired him.  *Id.*  The city filed for summary judgment and their motion was denied because there was a genuine dispute as to a fact that was material to the decision in the case: whether the police chief had been fired.  *Id.*  In *Fetner* this issue was material because an employee with a vested right in his government employment cannot make a claim for a procedural due process violation if he quits.  In our case,

although there is a similar factual dispute to that in *Fetner*, it does not eliminate Plaintiff's burden to meet the later steps of the *McDonnell Douglas* test.

### III.   The Plaintiff has failed to rebut the Defendant's justification.

The first step of the *McDonnell Douglas* test is that the plaintiff must make a prima facie showing on each claim.  *See Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1333 (11th Cir. 1999).   The summary judgment standard requires the court to believe the evidence of the non-movant and draw all justifiable inferences in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  Thomas has adduced several interactions and a timeline that could give rise to an inference of discrimination because of age, disability, disability retaliation, and age retaliation. The Court will assume for the purposes of argument that Thomas has made a prima facie showing on each count.  *See East v. Clayton County*, 436 Fed. Appx. 904, 911 (11th Cir. 2011) (Plaintiff meets the requirements for age discrimination by showing that (1) he was a member of a protected age group, (2) he was qualified for his position, (3) he suffered an adverse employment action and (4) he was treated less favorably than any younger, similarly situated employee.);  *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) (Plaintiff meets the requirements for disability discrimination by showing that (1) he is disabled, (2) he was a qualified individual at the relevant time and (3) he was discriminated against because of his disability.); *Bagwell v. Morgan Cnty. Comm'n*, 676 Fed. Appx. 863, 869 (11th Cir. 2017)

(Plaintiff meets the requirements for disability retaliation by showing that (1) he participated in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the Plaintiff's participation in the protected activity and the adverse employment action.); *Barnett v. Athens Reg'l Med. Ctr.*, 550 Fed. Appx. 711, 714 (11th Cir. 2013) (Plaintiff meets the requirements for age discrimination by showing that he (1) participated in a protected activity, (2) suffered an adverse employment action, and (3) there was a causal connection between the Plaintiff's participation in the protected activity and the adverse employment action.)

    The second step in the *McDonnell Douglas* test requires the defendant to offer a neutral business justification for the termination. The defendant at this stage "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Defendant focuses in this stage on the fact that Thomas' coworkers did not trust him. (Doc. 58-1 at 24). They told DeThomas they didn't trust him in September, and they repeated it on the survey in November. *Id.* This evidence is untainted by the opinions of Thomas' supervisors and is especially powerful because it is the opinion of the same employees that he claimed he was protecting from

discrimination, the same employees who he had been managing and presumably getting to know for over a decade.

The final step is for Plaintiff to directly rebut the evidence of mistrust as a justification for his firing. The plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely pretext for discrimination." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006). This can be done by "directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207(1981)

Plaintiff fails to do either. The only time Thomas directly addresses the evidence of mistrust is in his declaration, where he states that the Hogan 360 review was mismanaged by DeThomas because she hadn't sent it to people he recommended and hadn't warned them it was coming. (61-1 at 7). The Eleventh Circuit has explained that quibbles like this are insufficient to defeat an employer's justification:

> Alvarez argues at length that Royal Atlantic's complaints about the quality of her work were unfounded, but the fact that she thinks more highly of her performance than her employer does is beside the point. The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head…The question is not whether it really was Alvarez's fault that assignments were not completed on time, or whether she did delegate excessively, or whether she was aggressive

and rude to her colleagues and superiors, or whether she actually lost an important document or truly did fall asleep at her desk. The question is whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about Alvarez as cover for discriminating against her…

*Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

Here, Thomas' quibbles with the survey are not probative of the pretextual nature of the proffered justification. The survey corroborates DeThomas' statements about her interactions with employees when she first visited the plant. Although Thomas alleges that his supervisors were the ones discriminating against him, his own co-workers and subordinates were the ones that provided the basis for his firing. The fact that DeThomas sent the survey to people Thomas had not pre-approved does nothing to corrode the credibility of the survey. And Thomas' disagreements with the methodology or results of the survey are not substantial evidence that could convince a reasonable jury that it is more likely his firing was motivated by a protected classification than by his general failure to engender trust amongst his colleagues.

Plaintiff's last-ditch effort to overcome Defendant's justification for his termination is the argument that "[because] Defendant has taken inconsistent positions relating to why Mr. Thomas is no longer employed…any reason offered by the Defendant as to why he is no longer employed is pretextual." (Doc. 60 at 13). This argument fails. The only inconsistency in this case is about *how* Thomas was

separated from the company; Defendant has argued here that Thomas was not terminated but told the Alabama Department of Labor that he had been. Defendant's explanation for *why* it took the actions that it took—the Hogan 360 review and related issues—has never changed nor has Defendant been inconsistent in asserting it.

The cases cited by Plaintiff are inapposite.[5] He cites *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) and *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) to support the proposition that the Court's suspicions must be aroused by, respectively, the "falsity of the employer's explanation" and "contradictions in the employers proffered legitimate reasons" as to why the employee and employer have been separated. (Doc. 60 at 13). But the inconsistency that would expose an employer to suspicion under *Reeves* and *Alvarez* is inconsistency as to *why* the employee was separated. It is not the same type as the inconsistency that Plaintiff alleges exists in Defendant's position, which is over *how* the employee became separated. An employer is not estopped from explaining why it terminated an employee simply because it also argues that the employee was not really terminated but quit instead.

---

[5] Although Defendant argued that the series of events during the April meeting did not constitute termination, it has conceded that Thomas would have walked out of the room on either a performance improvement plan or a transition plan. Because the Court has found that these facts support an inference of termination, it will refer to Defendant's reasons for the two plans as reasons for termination.

The federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. …our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  Whether STERIS fired Thomas, transferred him, or in any other way altered his employment, it has consistently given a non-discriminatory justification as to *why* it happened: Thomas did such a bad job that many of his co-workers distrusted him and told management that he was incapable of continuing to perform his duties.  (Doc. 58-1 at 28). Since Thomas has not rebutted this justification or effectively attacked its credibility, his claims fail.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment on all counts is GRANTED.  Judgment will be entered by separate order.

**DONE** and **ORDERED** this 6th day of September, 2019.

                                             /s/ Andrew L. Brasher
                                    ANDREW L. BRASHER
                                    UNITED STATES DISTRICT JUDGE